No. 28,138.

The Cloud County Farm Bureau, *Plaintiff*, v. The Board of County Commissioners of the County of Cloud, *Defendant*.

(268 Pac. 91.)

Opinion filed June 9, 1928.

*Park B. Pulsifer* and *Clyde L. Short*, both of Concordia, for the plaintiff.

*Tom Kennett*, county attorney, *W. D. Vance* and *R. E. McTaggart*, both of Belleville, for the defendant.

*William A. Smith*, attorney-general, and *Leon W. Lundblade*, assistant attorney-general, as *amici curiæ*.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an original proceeding brought by The Cloud County Farm Bureau, of Cloud county, to compel the board of county commissioners of Cloud county to make an appropriation of not less than $1,200 to the farm bureau as provided in R. S. 2-601, and the following sections relating to county farm bureaus. It appears that the Cloud County Farm Bureau was organized on

January 3, 1916, and has been operating as a farm bureau ever since that time, and has received appropriations each year from the county up to and including the year 1926, the appropriation for that year being $1,724.37. On August 1, 1927, the plaintiff filed its budget with the county clerk showing the amounts needed for the salaries and expenses of the bureau for the ensuing year. This was done to be used as a basis for an appropriation for that year and the making of a levy on the taxable property of the county to provide funds needed for the farm bureau work. At the August meeting of 1927 the board of county commissioners declined to make an appropriation or a levy to provide funds for the maintenance of the bureau upon the ground that the bureau did not have a *bona fide* membership of 250. Also that it had failed to file and certify that it had $800 on deposit available for the use of the bureau; and further, that the making of the appropriation was a matter within the discretion of the board of county commissioners, and that it had exercised its discretion in refusing to appropriate funds for the maintenance of the bureau; and still further, that the act of the legislature providing for an appropriation was a violation of the state and federal constitutions.

The objections raised by the defendant involve an interpretation as well as the validity of the act providing for the organization and maintenance of farm bureaus. Preliminary to the consideration of the act it is not improper to note that on May 8, 1914, congress passed an act providing for the coöperation of extension work to aid in diffusing among the people of the United States useful and practical information on subjects relating to agriculture and home economics, and making appropriations to be inaugurated and administered by the agricultural colleges of the states as the legislature of each state may direct. (38 Stat. ch. 79; U. S. Code Annotated, Title 7, §§ 341 to 348.) In 1915 the legislature of Kansas passed a coöperating act, the pertinent sections of which provide:

"*Aid of bureaus.* That whenever there shall be organized in any county in the state of Kansas a county farm bureau having a membership of 25 per cent of the *bona fide* farmers of the county, or as many as 250 farmers, and having for its purpose the giving of instruction in agriculture and home economics to the people of said county through practical demonstrations and otherwise, and the employment of a county agricultural agent or agents to prosecute this work, the Kansas state agricultural college shall contribute, from federal and state funds granted for demonstrations in agriculture and home economics, not less than $1,200, as far as such funds are available, towards the salary of

such county agricultural agent, or agents. All applications for such funds must be made by farm bureaus to the extension division of the Kansas state agricultural college, on or before June 1 and December 1 of each year." (R. S. 2-601.)

"*Conditions of such aid.* Before such appropriation is made the county farm bureau shall present to the board of county commissioners of its county a copy of the constitution and by-laws adopted by the farm bureau, and approved by the Kansas state agricultural college, and a certified statement of deposit in the local bank of the county of not less than $800, which shall be used subject to the order of the county farm bureau for providing the necessary equipment for said bureau." (R. S. 2-602.)

"*County appropriations and levies for bureau.* When said county farm bureau shall present to the board of county commissioners its list of farm bureau members provided in section 1, and its certificate of deposit as provided in Laws 1915, chapter 166, section 2, the said board of county commissioners shall appropriate a sum of money not less than $1,200 per annum to assist in the payment of the salary of the county agricultural agent and the expenses of the farm bureau. The executive committee of the farm bureau shall be required to prepare and present to the board of county commissioners, on or before the first Monday in August, a budget or budgets showing clearly the amounts needed from year to year, which budgets shall be used as the basis for the appropriation by the county commissioners, and the county commissioners shall be empowered to make a tax levy against the property of the county, real and personal, sufficient to raise the funds needed for the farm bureau work, which levy shall be in addition to all other levies authorized by law. Before and until the income from such tax levy is available the county commissioners may make appropriations necessary for farm bureau work from the general funds of the county, and shall have power to replace such appropriations from the general fund by transferring an equal amount from the farm bureau fund when available." (R. S. 2-603.)

It is contended by the defendant that the membership of the bureau was insufficient and that the deposit in the bank for the maintenance of the bureau was not shown. In a resolution the board of county commissioners alleged that on August 1, 1927, the list of members contained the names of persons who were not *bona fide* farmers. It is recited that quite a number of members were added after August 1, and that these were not entitled to be counted because they were not filed in proper time. It appears that the dean of the extension division of the state agricultural college had inspected the equipment of the bureau and had approved the budget presented to the defendant as a basis for an appropriation by the board. It was certified that an appropriation of $3,295 was necessary to carry on the work. As to the membership it was shown

that the organization was effected in 1916, and that it had been maintained continuously since that time, in part by appropriations made each year by that board. It was duly organized under the provisions of the statute, and there had been no forfeiture, and it was shown to have carried on uninterruptedly for more than ten years. Being legally organized under the statute, it is a public organization somewhat similar to a school district or other munici-pality. When duly organized its existence continued and will con-tinue until it is dissolved or its right forfeited at the instance of the county attorney or the attorney-general. If it fails to carry out the purpose for which it was created or to maintain an effective and legal membership, it may be challenged by the named public officers, but its existence cannot be challenged by the board of county com-missioners nor by any private party. The board or anyone challeng-ing a misuser of its powers or functions, or states that it fails to ful-fill the design and purpose of its organization, is at liberty to make representations and an application to the proper officers to institute a proceeding to dissolve the organization or to correct any misuse or abuse of the powers granted. The purpose as declared in its constitution and by-laws is expressed in these words:

"In harmony with the Smith-Lever act and the Kansas farm bureau law providing for the support of farm bureau work, 'This organization shall have for its purpose the giving of instructions in agricultural and home economics to the people of the county through practical demonstrations and otherwise, and the employment of a county agent or agents to prosecute this work.' The efforts of this organization and its employees shall be to promote the most profitable and permanent system of agriculture; the most wholesome and satisfying living conditions; the highest ideals in home and community life; and a genuine interest in the farm bureau business and rural life on the part of young people."

These bureaus are under the supervision of the dean of the division of extension of the state agricultural college and, as stated, he has approved the work of the bureau and certified to the board that its equipment is satisfactory and that it has fulfilled all the require-ments of the law. It follows that the board was not competent to challenge the validity of the organization or its membership. Neither could it refuse to follow the requirements of the statute re-lating to its maintenance. The objection that it had not been shown that it had $800 on deposit in a bank when the appropriation was requested is not good in this proceeding. That, like the membership,

was a requirement for the original organization of the bureau with which there had been compliance, but once that it had been duly organized the law in that respect has been fulfilled. Under the statute it was not necessary that the bureau should be reorganized each year. After the organization all that was required was that the executive committee should present to the board of county commissioners on the first Monday in August, from year to year, a budget showing clearly the needs of the bureau. As to the appointment of an agent it is provided that he shall be selected by the executive board, that he must have had five years' experience in practical farm work, that he shall be under the general direction and supervision of the agricultural college, and that the constitution and by-laws as well as all accounts and expenditures of funds shall be subject to the approval of the director of extension of the Kansas state agricultural college. (R. S. 2-607:) As every essential step of the bureau was approved by the director of the college, it became the duty of the board of county commissioners to make the appropriation provided by statute. The claim that the appropriation is a matter within the discretion of the board is not justified under the statute. It requires that when a bureau presents an approved budget the board "shall appropriate." The only discretion vested in the board is whether a greater amount than $1,200 shall be appropriated. The theory of the statute is that an amount sufficient to aid in the proper maintenance of the bureau shall be appropriated, but that it shall not in any year be less than $1,200. The demand of the plaintiff in this proceeding is that there shall be an allowance of at least the minimum sum. As to the constitutionality of the act, there is little ground for contention. The law has been enacted for a public, educational and laudable purpose. It is general in its character and operates alike upon all organizations of a specified class, and it cannot be said that the classification made is unreasonable, nor is there any ground for contending that it is an unwarranted delegation of legislative power. It is a common and valid exercise of the police power of the state, by which the exercise of discretion and the carrying out of the provisions of an act of the legislature is vested in various state boards, commissions and public officers. (*Ratcliff v. Stock-yards Co.*, 74 Kan. 1, 86 Pac. 150; *Schaake v. Dolley*, 85 Kan. 598, 613, 118 Pac. 80; *Balch v. Glenn*,

85 Kan. 735, 119 Pac. 67; *State, ex rel., v. Drainage District,* 123 Kan. 191, 254 Pac. 372, and cases cited.)

In so far as the requirement that the burden of the bureau shall be cast upon the county in which it is located and require it to expend money for a public purpose, the act is well within the legislative power. In *State, ex rel., v. Comm'rs of Shawnee Co.,* 28 Kan. 431, it was held to be within the power of the legislature to require a county to bear the burden and pay the expense of a state road established by the legislature which ran through the county. It was said:

"It will be borne in mind that the purpose for which this expense is cast upon the county is a purely public purpose—one that is universally and without question recognized as such. It is not like compelling a county to take stock in a railroad corporation, or to aid in the building of a railroad, or to invest its public moneys in any enterprise in which there is something of private interest. A public highway is a matter solely of public interest. The laying out and keeping in order of highways is one of the ordinary duties of counties and cities." (p. 433.)

See, also, *Fair Association v. Myers,* 44 Kan. 132, 24 Pac. 71; *State v. Atkin,* 64 Kan. 174, 67 Pac. 519; *State v. Robinson,* 35 Neb. 401.

We see no conflict in the act with the federal constitution, nor do we discover any reason for the refusal of the board of county commissioners to make an appropriation to at least the extent of $1,200, and therefore the plaintiff is entitled to the relief sought. The peremptory writ of mandamus is allowed.