No. 38,372

The State of Kansas, ex rel., Myron S. Steere, County Attorney of Franklin County, Kansas, *Appellee,* v. The Franklin County Farm Bureau and Kansas Farm Bureau, Inc., *Appellants,* and Kenneth Cunningham, Harold Van Horn and John O'Neill, members and officers of The Franklin County Farm Bureau; L. C. Williams, Director Extension Service, Kansas State College of Agriculture; Board of County Commissioners of Franklin County, Kansas, consisting of W. H. Lancaster, F. H. Bets, and Lee Bonar.

(239 P. 2d 570)

Opinion filed December 27, 1951.

*Hal E. Harlan,* of Manhattan, *John A. Etling,* of Kinsley, and *John B. Pierson,* of Ottawa, argued the cause and *A. M. Johnston,* of Manhattan and *W. N. Beasley,* of Kinsley were with them on the briefs for the appellant.

*Myron S. Steere,* of Ottawa, and *Harry K. Allen,* of Topeka, argued the cause and *William S. Bowers,* County Attorney of Franklin County, and *L. M. Ascough,* of Topeka, were with them on the briefs for the appellee.

The opinion of the court was delivered by

Smith, J.: This was an action to enjoin the defendant, The Franklin County Farm Bureau, and the Director of Extension Service of the Kansas State College of Agriculture and Applied Science of Manhattan, from making payments to the Kansas Farm Bureau, Inc., and to enjoin the Board of County Commissioners of Franklin County from making a tax levy for the Franklin County Farm Bureau until such time as the other defendants had complied with certain statutory requirements as to filing a list of the current membership and a proper request for funds. Judgment was for the plaintiff. The defendants, The Franklin County Bureau and The Kansas Farm Bureau, Inc., have appealed.

The action was brought by the state on the relation of the county attorney of Franklin county.

The petition first identified all parties.

It then alleged that the Franklin County Farm Bureau was organized under what is now G. S. 1949, 2-601 to 2-607 and that all the requirements and provisions of the statute had been complied with by it and it had a membership of 575 members.

The petition then alleged that the words "Farm Bureau" as used in the petition did not include "Kansas Farm Bureau." It will be well to note here that in this opinion "Director" will refer to Director of Extension, "Farm Bureau" will refer to the Franklin County Farm Bureau and the words "Kansas Farm Bureau, Inc.," will refer to the state-wide organization. They are organized under separate statutes.

A copy of the constitution of the farm bureau was attached to the petition.

The petition then stated the duties of the secretary-treasurer of the organization, as provided by its constitution, and that the annual dues since the third of December, 1948, had been eight dollars for the head of a family and a dollar for women and that under the section of the constitution referred to above, it was the duty of the secretary-treasurer to collect the membership dues and to draw all checks and vouchers for the disbursement of funds and that by the provisions of G. S. 1949, 2-607, expenditures were subject to the approval of the director.

The petition then set out the purpose of the Franklin County Farm Bureau as follows:

"In harmony with the Smith-Lever Act and the Kansas Farm Bureau Law providing for the support of the Farm Bureau work, this organization shall have for its purpose, 'The giving of instruction in agriculture and home economics to the people of said county through practical demonstrations and otherwise, and the employment of a county agricultural agent or agents to prosecute this work.' The efforts of this organization and its employees shall be to promote the most profitable and permanent system of agriculture; the most wholesome and satisfying living conditions; the highest ideals in home and community life; and a genuine interest in the farm business and rural life on the part of young people."

The petition then alleged that the chief purpose and function of the Franklin County Farm Bureau was educational in character;

"That the Franklin County Farm Bureau is a separate organization and has no legal authority to affiliate with the Kansas Farm Bureau, or with any private organization engaged in commercial activities or in the influencing of legislation."

The petition then stated the money paid by the members of the Franklin County Farm Bureau as dues must under the statutes

and its constitution be used by its officers for the purposes specified and the farm bureau or its officers were without authority to pay any part of it to the Kansas Farm Bureau or any other organization, public or private, engaged in commercial activities or in influencing of legislation.

The petition then stated that the Kansas Farm Bureau, a private corporation, had made the director an ex-officio member of its board of directors; had appropriated the name "Farm Bureau" in order to confuse the members of the Franklin County Farm Bureau and had so confused its activities through the director of extension service, its assistants and agents, as to give an understanding to the members of the Franklin County Farm Bureau and the farmers of Franklin county that it was the main and official farm bureau organization and through its agents secured an amendment to the constitution of the Franklin County Farm Bureau providing for annual dues in the sum of eight dollars, which increased dues in the sum of five dollars was for the sole benefit of the Kansas Farm Bureau and not for the purpose contained in the constitution of the Franklin County Farm Bureau, and as a result of this amendment and its approval by the director the farm bureau had paid, without lawful authority, five dollars out of each eight dollar membership collected to the Kansas Farm Bureau for the past year and would continue to do so unless restrained, and the director of extension would continue to approve, in violation of the constitution of Franklin County Farm Bureau and the Farm Bureau Act of the State of Kansas, unless restrained.

The petition then alleged that the constitution of the Franklin County Farm Bureau required the secretary-treasurer to collect the membership dues, keep a record of all receipts and expenditures, pursuant to R. S. 1923, Art. 6, Sec. 2-607, draw checks for the disbursement of funds, and for the calendar year of 1950 membership dues in the amount of $5,200 were collected, of which amount $4,600 was collected from the "head of family" members, of which $2,875 was placed in a special bank account and later was unlawfully paid to the Kansas Farm Bureau; that by reason of this plan and manipulation caused by the Kansas Farm Bureau, Inc. and approved by the director a budget was submitted to the Franklin County Commissioners for the year 1950, a copy of which budget was attached to the petition; that G. S. 1949, 2-603 provided as follows:

". . . The executive committee of the farm bureau shall be required to prepare and present to the board of county commissioners, on or before the first Monday in August of each year, its list of names of the current membership of

the county farm bureau, as provided in section 2-601 of the General Statutes of 1935, which list shall be at all reasonable times open to public inspection, and a budget or budgets showing clearly the amounts needed from year to year, which budgets shall be used as the basis for the appropriation by the county commissioners, and the county commissioners shall be empowered to make a tax levy against the property of the county, real and personal, sufficient to raise the funds needed for the farm bureau work, which levy shall be in addition to all·other levies authorized by law: *Provided,* That such tax levy shall not exceed one-half mill:   .   .   ."

The petition then alleged that the budget filed for 1950 listed among the total resources of the farm bureau for the calendar year membership dues in the amount of only $2,200, when actually all the dues to be collected for the calendar year would be in the sum of $5,200, and by that reason the budget furnished did not reflect the full amount of membership dues to be collected and the board of county commissioners relying on the erroneous statements contained in that budget levied a tax of .075 mills in excess of what was otherwise required to carry on the work of the farm bureau.

The petition then alleged that officers of the farm bureau upon the advice and approval of the director shifted that burden upon the general taxpayers of the county and failed to furnish the board of county commissioners a list of the names of current membership of the farm bureau, as required by G. S. 1949, 2-603, and had at the time of the filing of the action failed to submit a current list of that membership and the same parties prepared a budget for the year commencing January 1, 1951, and submitted it to the board of county commissioners of Franklin county, a copy of which was attached to the petition, which budget misrepresented the amount of membership dues to be collected by the Franklin County Farm Bureau for the calendar year 1951 and the levy to be made upon the real and personal property in Franklin county, Kansas, was .075 mills in excess of the required levy in disregard of the rights of the taxpayers of Franklin county and such levy in the amount of approximately .075 mills would be made by the board of county commissioners of Franklin county unless the court issued a restraining order.

The petition then alleged that notwithstanding all the above facts the farm bureau and the director threatened, in violation of the constitution of the Franklin County Farm Bureau, and in violation of the Kansas Statutes, to pay over these funds to the Kansas Farm Bureau and continued to request an appropriation from the board of county commissioners based upon erroneous statements contained

in the farm bureau budget in order to shift the burden of excess levy in the amount of .075 mills upon the taxpayers of Franklin county and continued to deprive many farmers of the benefits provided for under the constitution of the farm bureau, as outlined in G. S. 1949, 2-601 to 2-607, unless enjoined therefrom.

The prayer was as follows:

"WHEREFORE, plaintiff prays that the officers, agents and/or employees of the Franklin County Farm Bureau and the Director, Extension Service, his assistants and/or agents, be and each of them and their respective successors, be restrained and permanently enjoined from violating the constitution of the Franklin County Farm Bureau and the laws of Kansas by making such payments to the Kansas Farm Bureau; the Board of County Commissioners be restrained and enjoined from making a tax levy for the Franklin County Farm Bureau until such time as the other defendants herein file a true and correct request for funds, together with a current list of the membership of said organization as required by section 2-603, G. S. S. Kansas, 1947; that the Director, Extension Service, his administrative assistant and/or agents, be restrained and permanently enjoined from approving any budget submitted by the Franklin County Farm Bureau, unless ( a ) a correct list of the current membership of the Franklin County Farm Bureau be submitted and filed according to Section 2-603, G. S. S. Kan. 1947, and ( b ) unless the budget submitted to the Board of County Commissioners of Franklin County, Kansas, is a true statement of the entire resources of the Franklin County Farm Bureau, including the total membership dues; and ( c ) that the Director, Extension Service, is satisfied that no part of the money to be collected under the budget will be paid to the Kansas Farm Bureau or any other private corporation or organization; and for all proper and equitable relief, including cost of this action."

The constitution of the farm bureau was attached to this petition but it need not be set out here. The budget of the Franklin County Farm Bureau for the period from January 1, 1950, to December 31, 1950, was attached and reads as follows:

"LIABILITIES:

Transportation:

| | | |
|---|---:|---:|
| County Agricultural Agent | $550 | |
| Home Demonstration Agent | $450 | |
| County Club Agent | $450 | |
| Assistant County Agent | .... | |
| Equipment-Exchange on New Car | $900 | |
| Total Transportation | | $2,350 |

Office:

| | | |
|---|---:|---:|
| Printing | .... | |
| Telephone and Telegraph | $225 | |
| Rent, Heat and Light | .... | |
| Postage, Supplies and Stationery | $1,000 | |
| Equipment | $300 | |
| Total Office Expense | | $1,525 |

```
Salaries (agents and secretaries)...........................    $14,000
Contingent  ...............................................       $600
Subsistence  ..............................................       $375
    Total Liabilities ....................................     $18,850
RESOURCES:
Kansas State College......................................      $4,500
County Appropriation........................ ...          $12,150
Membership Dues ...........................................      $2,200
Other Resources ...........................................      ......
    Total Resources.....................................     $18,850"
```

This budget bore the approval of the director of extension service.

The farm bureau filed a document entitled a demurrer and answer. It demurred on the ground the petition did not state facts sufficient to constitute a cause of action against it. The answer admitted the identity of the parties; that it was organized as alleged; that its constitution was as alleged; that it collected dues as alleged and that its purpose was as alleged and it was organized in 1919.

It then alleged that it became a charter member of the Kansas Farm Bureau in February, 1927, and that with the approval of the director it affiliated with and paid annual dues to the Kansas Farm Bureau, Inc., a corporation organized under the Cooperative Marketing Act (17-1601 to 17-1631, G. S. 1935 as amended); that one of the purposes for which the Kansas Farm Bureau was organized according to its charter was to strengthen, develop and correlate the work of the county farm bureaus in their efforts to promote the development of the most profitable and permanent system of agriculture; the most wholesome and satisfying living conditions; the highest ideals in home and community life and a general interest in the business of farming and in rural life and that such purpose was consistent with the purpose of the farm bureau; that the farm bureau continued to be affiliated with the Kansas farm bureaus until 1947, when its members decided to disaffiliate; that thereafter on December 3, 1948, its membership changed its constitution by raising its dues and that this was approved by the director and from that date the farm bureau was affiliated with the Kansas Farm Bureau.

The answer then alleged that over a term of years the farm bureau and the director interpreted G. S. 1949, 2-601 to 2-607 and the constitution of the farm bureau as authorizing the farm bureau to affiliate with the Kansas Farm Bureau, Inc. and that such administrative interpretation was entitled to great weight in construing the authority of these organizations.

A similar demurrer and answer was filed by the Kansas Farm

Bureau. It contained the same admissions as the answer of the farm bureaus. It demurred to the petition on the ground that it did not state facts sufficient to constitute a cause of action. It also described how the Franklin County Farm Bureau was first organized and how it affiliated with the Kansas Farm Bureau, Inc. Its further allegations were substantially similar to those of the farm bureau. The charter of the Kansas Farm Bureau, Inc. was attached to the answer. The director filed an answer in the nature of a general denial except that it admitted he had given approval to various proceedings pleaded in the petition and answers.

The plaintiff's reply was a general denial.

The plaintiff filed a second amended reply to the demurrer and answer of the Kansas Farm Bureau, Inc. in which it denied all new matter alleged in the answer, admitted that the charter of the Kansas Farm Bureau contained a clause as follows:

"To strengthen, develop and correlate the work of the county farm bureaus in their efforts to promote the development of the most profitable and permanent system of agriculture; the most wholesome and satisfying living conditions; the highest ideals in home and COMMUNITY LIFE, AND A GENERAL INTEREST in the business of farming and in rural life."

This reply contained the following allegation:

"But specifically denies that said Kansas Farm Bureau, Inc., can engage in any such activity under the Cooperative Marketing Act under which said corporation was purportedly organized, namely Sections 17-1601 to 17-1631, General Statutes of Kansas, 1935, as amended."

The reply further alleged that the Kansas Farm Bureau, Inc., had lifted the above clause from the constitution of various farm bureaus, including the Franklin County Farm Bureau, for the purpose of defrauding and preying upon the farmers and taxpayers of the state and had usurped this power; that as a result of this unlawful usurpation the Kansas Farm Bureau, Inc., by means of confusion and misrepresentations procured the use and misappropriation of public funds, the facilities of county farm bureaus, their officers and agents, including the Franklin County Farm Bureau, the officers, employees and agents, to further its own interests, including the interests of its insurance companies.

The parties when the case was tried agreed on a statement of facts as follows:

"AGREED STATEMENT OF FACTS.

"It is agreed that photostatic copies of the Kansas Farm Bureau Bulletin, volume 1, number 1, issued in August, 1920, at Manhattan, Kansas, sets out the facts relating to the original organization of the Kansas farm bureau, com-

mencing on page 7 under the title 'Kansas State Farm Bureau' and continuing on pages 8, 9 and the first half of page 10.

"It is further agreed that the Franklin County Farm Bureau thereafter paid dues to the Kansas Farm Bureau from year to year and that thereafter and on or about December 4, 1929, the Franklin County Farm Bureau adopted a constitution which was duly and regularly approved by the director of extension of the Kansas State College of Agriculture and Applied Science as shown by a copy thereof attached to plaintiff's petition and marked 'Exhibit A' and which constitution provided for membership dues as set forth therein.

"It is further agreed that the Kansas Farm Bureau was incorporated under the Cooperative Marketing Act on or about June 23, 1931, and that with the approval of the director of extension of the Kansas State College of Agriculture and Applied Science the Franklin County Farm Bureau affiliated with and paid annual dues in varying amounts to the Kansas Farm Bureau until the year 1947, when the Franklin County Farm Bureau decided to disaffiliate with the Kansas Farm Bureau, except, however, that during two or three years during the middle 30's no dues were paid.

"The amendment to the constitution of Franklin County farm bureau adopted December 3, 1948, by the members, raising dues to $8.00 annually for head of family members was approved by the director of extension February 8, 1949, but that dues under said amendment were first collected for the calendar year 1950; that for the calender year 1950 the dues in the amount of $8.00 per head of family member were paid to the Franklin County farm bureau and that of that sum the amount of $3.00 was placed in the treasury of the Franklin County Farm Bureau and the sum of $5.00 was placed in a special bank account in the Peoples. National Bank of Ottawa, Kansas, marked 'Dues Account, Betty White,' and later the moneys from said account were from time to time during 1950 paid over to the Kansas Farm Bureau by checks drawn upon the Dues Account by Betty White. The checks were made payable to the Kansas Farm Bureau and signed 'Dues Account, Betty White,' or 'Dues Account, Franklin County Farm Bureau, Betty White.' Betty White is a secretary in the office of the Franklin County Farm Bureau, Ottawa, Kansas; that each time moneys were sent by the secretary, Betty White, to the Kansas Farm Bureau it was accompanied by a list of individuals who had paid such dues and that upon the receipt of such dues money and membership lists, the Kansas Farm Bureau returned to the Franklin County farm bureau a duplicate of said membership list approved by the Kansas Farm Bureau and a receipt for the money.

"It is further agreed that at a meeting of members of the Franklin County farm bureau held on December 3, 1948, it was debated that $5.00 out of the $8.00 dues would go to the Kansas Farm Bureau and the membership knew that $5.00 of the $8.00 dues would go to the Kansas Farm Bureau as membership dues and that they voted on the amendment as set out in Exhibit 'B,' which carried.

"It is agreed that when membership dues were collected from the members of Franklin County farm bureau a receipt for such dues was issued by the Franklin County farm bureau as shown by the card, Exhibit '1.'"

"Exhibit 1," referred to in the Agreed Statement of Facts, is as follows:

"EXHIBIT I.

"Franklin County Farm Bureau

"Name_____

"Address_____

"Township_____

    "COUNTY FARM BUREAU ................... $3.00

    "KANSAS FARM BUREAU ..................... $5.00

          "TOTAL ............... ..... $8.00

"AMOUNT PAID $_____   By Check_____   Cash _____

"DATE _____

(Printing appearing upon one end of card as follows:)

    "Member of

FRANKLIN COUNTY FARM BUREAU

BETTER HOMES AND COMMUNITIES

AGRICULTURAL EXTENSION SERVICE

"In the opening paragraph of the Agreed Statement of Facts reference is made to a photostatic copy of the Kansas Farm Bureau Bulletin, Vol. 1, No. 1, issued in August, 1920, at Manhattan, Kansas, which sets out the facts relating to the original organization of the Kansas Farm Bureau and that portion of said Kansas Farm Bureau Bulletin was introduced in evidence by agreement of the parties as Exhibit II and reads as follows:

"EXHIBIT II.

"The Kansas State Farm Bureau

"Action which resulted in the organization of the Kansas Farm Bureau was taken in a conference of farm bureau officers and county commissioners, held November 21-23, 1918, called by H. Umberger, director of extension of Kansas State Agricultural College. At this conference, it was recommended that a state wide committee be appointed to investigate, gather information and lay plans for the organization of a state farm bureau to be perfected when a majority of farm bureaus in the state had accepted the principles of the organization.

"A committee consisting of F. O. Peterson of Burdick, D. M. Lauver of Paola and H. N. Holdeman of Meade was appointed to make investigations and report on the matter of organizing such an association. The committee met after adjournment of the regular conference and requested Dean Umberger to obtain for it all possible data and information on state federation in the United States.

"The committee then called a meeting to be held in Topeka, February 20, 1919, for further consideration of this question. Ralph Snyder of Oskaloosa, and Dean H. Umberger of the extension division of Kansas State Agricultural College, were present at this meeting on invitation of the committee. A conference of Farm Bureau delegates was called for October 21, 1919, to consider the advisability of organizing a Kansas State Farm Bureau."

This original statement of facts then contained some material which is not important in this opinion and will not be set out herein and the court made findings of fact as follows:

"1. That the Petition does not state a cause of action against the defendant, L. C. Williams, director of extension, and that judgment should be rendered in his favor.

"2. The court makes findings of fact and conclusions of law which are in words and figures as follows:

"I.

"The court accepts the Agreed Statement of Facts as shown by Exhibit 3, and treats them as though fully set out herein.

"II.

"The budget submitted to the Board of County Commissioners by the Franklin County Farm Bureau for the year 1951 was not a correct statement of the financial condition.

"III.

"The amount accounted for in the budget for 1951, as submitted by the Franklin County Farm Bureau to the board of county commissioners as dues received, was three dollars and not eight dollars as provided by the constitution of the Bureau to be paid as dues by heads of families.

"IV.

"Eight dollars was paid by each member of the Franklin County Farm Bureau who was the head of a family to someone representing the Farm Bureau as indicated by the Agreed Statement of Facts, but only three dollars of this amount was accounted for in the budget submitted to the County Commissioners of Franklin County, Kansas, leaving five dollars of the amount collected unaccounted for.

"V.

"Of the eight dollars collected, three dollars is accounted for by the Franklin County Farm Bureau in the budget submitted to the county commissioners and five dollars was paid to the Kansas Farm Bureau.

"VI.

"The Franklin County Farm Bureau did not pay the five dollars to the Kansas Farm Bureau directly but did so indirectly and by subterfuge in placing the money in a bank account in the name of an officer of the Franklin County Farm Bureau, who eventually paid five dollars to the Kansas Farm Bureau for each head of a family who paid dues in the amount of eight dollars."

The conclusions of law were as follows:

"CONCLUSIONS OF LAW.

"I.

"The Franklin County Farm Bureau may not under Section 17-1601 et seq., G. S. 1935, become a member of the Kansas Farm Bureau.

"II.

"The Franklin County Farm Bureau has no authority, express or implied, to pay dues to the Kansas Farm Bureau.

## "III.

"The County Commissioners of Franklin County, Kansas, should be enjoined from directing or authorizing the payment of any tax levy money to the Franklin County Farm Bureau until such Farm Bureau shall have submitted to said Board a correct statement of its financial conditions as provided for in Sec. 2-603 G. S. 1947 Supp., and otherwise complied with said section.

## "IV.

"The injunction provided in the foregoing Conclusion should not enjoin the county commissioners from making an appropriation from the general funds of the county as provided for in G. S. 1947 Supp.

## "V.

"Jurisdiction should be retained by the Court in order to enforce its judgment and determine any other matters which may arise in connection with present or future issues involved in the controversy.

## "VI.

"In its findings and conclusions of fact the court did not consider Exhibits 5, 7, 8, 9, 10, 11, 12, 14 or 15.

"It Is Therefore, by the court ordered, adjudged, and decreed that the Franklin County Farm Bureau may not under Section 17-1601 et seq. G. S. 1935, become a member of the Kansas Farm Bureau.

"It is further ordered, adjudged and decreed that the Franklin County Farm Bureau has no authority, express or implied, to pay dues to the Kansas Farm Bureau.

"It is further ordered, adjudged and decreed that the Board of County Commissioners of Franklin County, Kansas, should be and are hereby enjoined from directing or authorizing the payment of any tax levy money to the Franklin County Farm Bureau until said farm bureau shall have presented to said board a statement of its financial condition, as provided by Section 2-603 1947 Supp., and otherwise complied with said section.

"It is further ordered that the injunction provided for against the board of county commissioners in the preceding paragraph should not enjoin the board of County Commissioners of Franklin County, Kansas, from making an appropriation from the general funds of the county as provided for in G. S. 1947 Supp.

"It is further ordered that the court retain jurisdiction herein in order to enforce its judgment and determine any other matters which may arise in connection with the present and future issues involved in this controversy.

"It is further ordered and adjudged that the petition does not state a cause of action against L. C. Williams, director of extension of Kansas State College of Agriculture and Applied Science, and that judgment is hereby rendered in his favor.

"It is further ordered and the judgment of this court that the costs of this action should be divided between the Franklin County Farm Bureau and the Kansas Farm Bureau, Inc."

The Kansas Farm Bureau, Inc., filed a motion to vacate the decision and for a new trial for the reason the decision was in whole or

in part contrary to the evidence; the decision was contrary to law; newly discovered evidence; erroneous rulings of the court; and accident and surprise.

The motion of the Franklin County Farm Bureau for a new trial was substantially the same.

These motions were both overruled.

Thereupon the Farm Bureau and the Kansas Farm Bureau, Inc. moved to strike from the conclusions of law the following paragraphs:

"1. The Franklin County Farm Bureau may not under Section 17-601 et seq., G. S. 1935, become a member of the Kansas Farm Bureau.

"2. The Franklin County Farm Bureau has no authority, express or implied, to pay dues to the Kansas Farm Bureau."

The Franklin County Farm Bureau, Inc., appealed from the judgment and from the rulings and order overruling its motion for a new trial and overruling its motion to strike the above paragraphs from the conclusions of law and from the judgment.

The Kansas Farm Bureau, Inc. appealed from the same orders and judgments.

This appellant filed an amended notice of appeal by adding as parties the director and the Board of County Commissioners of Franklin County, all defendants in the trial court.

The Franklin County Farm Bureau filed a similar amended notice of appeal.

The appellants, the Franklin County Farm Bureau and the Kansas Farm Bureau, Inc., filed a joint brief. They state the questions involved are as follows:

"QUESTIONS INVOLVED.

"1. Could the Franklin County Farm Bureau under G. S. 1949, 17-1601 et seq., become a member of the Kansas Farm Bureau?

"2. Could the Franklin County Farm Bureau legally pay dues to the Kansas Farm Bureau from the membership dues money paid in by its members?

"(a) May the Franklin County Farm Bureau be classified as either a school district or other municipality?

"(b) Are the dues paid by the individual members of the Franklin County Farm Bureau and not commingled with tax money, private or public funds?

"3. Was the Franklin County Farm Bureau required to budget and earmark for extension education all of the money which its individual members paid in as dues?

"4. Did the trial court err in retaining jurisdiction of the cause?

"5. Did the trial court err in overruling defendants' demurrer to plaintiff's petition?

"6. Is the director of extension of Kansas State College of Agriculture and

Applied Science an agent of the State of Kansas for the approval of expenditures by county farm bureaus, and does his approval of the payment of dues by the local bureaus to the Kansas Farm Bureau preclude the State in this action from questioning such payments?"

There is not much dispute about the facts. The trial court in Finding No. 1 accepted the agreed statement of facts of the parties and based its judgment on the facts set out therein.

At the outset, plaintiff points out the provisions of chapter 8 of the Session Laws of 1951. This chapter repeals G. S. 1949, 2-601 to 2-607, and revamps the whole county farm bureau arrangement in the state. The organizations referred to heretofore in our statutes as farm bureaus of the various counties will be hereafter known and designated as county agricultural extension councils.

Section 1 of chapter 8, Session Laws of 1951 provides for the organizing of these councils and the following sections provide how their work shall be carried on. Section 12 repeals G. S. 1949, 2-601 to 2-607, effective January 1, 1952. Especial attention is called to section 9 of chapter 8, Laws of 1951. That section provides, in part, as follows:

"Such councils shall not engage in commercial or other private enterprises, legislative programs, or other activities not authorized by this act and shall not give preferred service to any individual, group or organization. County agricultural extension councils may collect fees for specific services which require special equipment or personnel, such as soil testing laboratory, seed testing service or other educational service, but they shall not collect membership dues nor shall they collect dues for or pay dues to any state or national organization or association:"

This action was brought in a large measure because of a contention on the part of some farm bureau members that the county farm bureaus did not have authority under the statute to belong to or pay dues to any other organization, such as the Kansas Farm Bureau. The trial court's judgment, from which this appeal is taken, was that the county farm bureau did not have such power. Since by the above enactment of 1951 there is a positive prohibition against the county organizations paying dues to any organization whatever it appears that the question involved in the judgment from which the appeal was taken is moot. Ordinarily this court will not consider and pass on moot questions where its judgment cannot be made effective. The questions involved here are of great public interest, however. Some financial adjustments between the various farm bureaus and the state farm bureau during this year of transition may require the final adjudication of the legal

questions involved. For that reason we will consider and pass on the legal questions involved.

It also appears that the county farm bureau has filed with the County Commissioners of Franklin County its budget for 1951 and included therein a statement showing all its resources for 1951 in the amount of $4,529. By the judgment of the trial court, from which the appeal was taken, the Board of County Commissioners of Franklin County was enjoined from authorizing any payment of tax money to the farm bureau until it should have presented to the board a correct statement of its financial condition. The farm bureau in filing its budget for 1951 complied with the terms of the above injunction—hence it has acquiesced in the judgment. No doubt this acquiescence is due in part at least to the provisions of section 9 of chapter 8 of the Session Laws of 1951 forbidding the payment of dues by the farm bureau to any organization. At any rate, it is difficult to see how our judgment on this question could be made effective. For the reasons heretofore stated, however, because the questions involved are public ones, we have concluded to pass on the merits.

The first paragraph of the court's judgment is "It is therefore by the court ordered, adjudged and decreed that the Franklin County Farm Bureau may not under Section 17-1601 et seq., G. S. 1935, become a member of the Kansas Farm Bureau." We have concluded the answer to the question raised by that paragraph of the judgment will decide this appeal.

We will examine G. S. 1949, 2-601 to 2-607, inclusive. It is commonly known as the Farm Bureau Act. It was first enacted in 1915. (See chapter 166 of that session.) Its enactment followed closely the enactment by congress May 8, 1914 of 38 Stat., Chap. 79; U. S. C. A. Title 7, Sections 341 to 348. It has remained in our statutes with but slight amendment since. It seems there had been organizations of farmers in some of the counties and they had in some cases been called farm bureaus. These enactments were the first recognition of them by providing for them to be supported by public funds. The first section provided for the payment to a county farm bureau of not less than $1,200 a year from federal and state funds granted for demonstrations in agriculture and home economics. In order to qualify for this money, however, the bureau in any county was compelled to have a membership of twenty-five percent of the farmers in the county or as many as 250 farmers. This money was to be used for the employment of county agricultural agents. The

application for funds must be made to the Kansas State Agricultural College and must be made to the extension division of that college. These sections stated the purpose of bureaus should be "the giving of instructions in agriculture and home economics to the people of said county through practical demonstrations and otherwise and the employment of a county agricultural agent or agents to prosecute this work." It is clear from the language used in these sections that the grant of the $1,200 was contingent upon the organization having the requisite membership and being organized for the purpose provided in the section. As already noted, the $1,200 spoken of in G. S. 1949, 2-601 was to be granted by the state agricultural college from federal and state funds. Congress provided for agricultural extension work. (See U. S. C. A. 7, Sec. 342.) That section provides as follows:

"Co-operative agricultural extension work shall consist of the giving of instruction and practical demonstrations in agriculture and home economics to persons not attending or resident in said colleges in the several communities, and imparting to such persons information on said subjects through field demonstrations, publications, and otherwise; and this work shall be carried on in such manner as may be mutually agreed upon by the Secretary of Agriculture and the State agricultural college or colleges receiving the benefits of sections 341 to 348, inclusive, of this chapter. May 8, 1914, c. 79, § 2, 38 Stat. 373."

By House Concurrent Resolution No. 4, Chapter 349, Session Laws of 1937, our legislature accepted the provisions of the federal act. That same year our legislature appropriated to the State Agricultural College $80,000 each year for extension work. (Ch. 30, Laws of 1937.) Each year money was appropriated by congress and by our legislature to be used under our act to give instructions in agriculture and home economics to the people and to employ agricultural agents in the counties under the federal act for the purpose of giving instruction and practical demonstrations in agriculture and home economics to persons not attending colleges in the several communities. The money was all appropriated to county farm bureaus. The federal act provided that the state must appropriate as much money as congress received from the federal government.

There were further requirements, however, upon which the contribution provided in G. S. 1949, 2-601 was made to depend.

G. S. 1949, 2-602 provided that before the contributions provided for by 2-601 should be made the county farm bureau should do three things, that is, it must file with the board of county commissioners a copy of its constitution and bylaws approved by the college; sec-

ond, it must file with the board a list of its members and third it must have on deposit in a bank $800.

G. S. 1949, 2-603, the next section, provided that when compliance had been made with all the foregoing conditions the county board should appropriate not less than $1,200 to assist in the payment of the salary of the county agricultural agent and the expenses of the farm bureau. Thus we see there was provided for each county farm bureau a minimum of $2,400 payable partly from federal, partly from state and partly from county funds. This section laid down other requirements, however. It provided that each year each farm bureau should present to the board first a list of the names of its members and second a budget showing the amount needed from year to year.

The section then provided that using this budget as a base the board was empowered to make a tax levy against the property in the county, not to exceed one-half mill, providing that if a levy of one-half mill would not raise $1,200, then the limit could be increased so as to raise that amount.

This section was the cause of litigation.

In *Cloud County Farm Bureau v. Cloud County Comm'rs*, 126 Kan. 322, 268 Pac. 91, the board of county commissioners had been contributing to the maintenance of the county farm bureau. In August, 1927, when it filed its budget with the board of county commissioners, the board refused to make an appropriation or make a levy to provide funds for its maintenance. The board took the position that the bureau did not have 250 bona fide farmers on its list of membership and did not have the $800 on deposit. It set up those facts in a mandamus action brought by the farm bureau to compel it to make a levy.

We first pointed out, as has been done already in this opinion, about how the state statutes and the federal statutes should be construed together. We then stated that the farm bureau had been organized pursuant to those statutes, and having once been organized it could not be challenged except in an action by the county attorney or the attorney general. We said:

"Being legally organized under the statute, it is a public organization somewhat similar to a school district or other municipality. When duly organized its existence continued and will continue until it is dissolved or its right forfeited at the instance of the county attorney or the attorney-general. If it fails to carry out the purposes for which it was created or to maintain an effective and legal membership, it may be challenged by the named public officers, but its

existence cannot be challenged by the board of county commissioners nor by any private party."

It will be noted we did not say the farm bureau was a municipal corporation but we said it was a public organization, somewhat similar to a school district, or other municipality. Coupled with the language immediately following it, the statement undoubtedly means the farm bureau once properly organized had all the power and authority given it by the statute and was a legal entity in and of itself. A corollary of such a statement must of necessity be that it has only those powers which are conferred on it by statute. This is a rule we have announced many times with reference to school districts, cities, drainage districts and similar organizations, that is, this organization is a creature of the state and has only the powers conferred on it by the statutes, and such incidental powers as are necessary to carry the statutory powers into effect.

(See *State, ex rel., v. City of Coffeyville,* 127 Kan. 663, 274 Pac. 258; *Kansas Gas & Elec. Co. v. City of McPherson,* 146 Kan. 614, 72 P. 2d 985; and *Trimble v. Topeka,* 147 Kan. 111, 75 P. 2d 241.)

Authority is not wanting that county farm bureaus are governmental agencies. (See *State, ex rel., Hall County Farm Bureau v. Miller et al.,* 104 Neb. 838, 178 N. W. 846, also *Jasper County Farm Bureau v. Jasper County,* 315 Mo. 560, 286 S. W. 381.) (See, also, *State, ex rel., v. Drainage District,* 123 Kan. 191, 254 Pac. 372.) Under this statute their constitutions as well as all their accounts and expenditures were subject to the approval of the director of extension. Funds to carry on their work were contributed from three sources of public money. The statute itself did not provide for membership dues. While the practice of the county farm bureau contributing part of the dues paid by its members to the Kansas Farm Bureau has been followed for years there is no mention of such a practice in the constitution or bylaws of the farm bureau. We have concluded that the provisions of G. S. 1949, 2-601 to 2-607 do not confer power on farm bureaus organized pursuant to it to join or pay dues to the Kansas Farm Bureau.

We turn now to a consideration of the statute, pursuant to which the Kansas Farm Bureau was organized. That is chapter 148 of the Laws of 1921, now G. S. 1949, 17-1601 to 17-1631, inclusive. It is known as the "Co-operative Marketing Act."

Defendants plead that one of the purposes for which the Kansas Farm Bureau was organized, according to its charter, was to

strengthen, develop and correlate the work of the county farm bureaus in their efforts to promote the development of the most profitable and satisfying living conditions, the highest ideals in home and community life and a general interest in the business of farming and in rural life.

G. S. 1949, 17-1601 provides the purpose of the act is as follows:

"In order to promote, foster, and encourage the intelligent and orderly marketing of agricultural products through co-operation and to eliminate speculation and waste; and to make the distribution of agricultural products as direct as can be efficiently done between producer and consumer; and to stabilize the marketing problem of agricultural products, this act is passed."

Section G. S. 1949, 17-1602 contains some definitions, amongst them being "(c) The term 'association' means any corporation organized under this act;" and "(d) the term 'person' shall include individuals, firms, partnerships, corporations and associations."

G. S. 1949, 17-1603 provides in part:

"(a) Ten (10) or more persons engaged in the production of agricultural products may form a nonprofit, co-operative association with or without capital stock, under the provisions of this act."

G. S. 1949, 17-1604 provides, in part, as follows:

"An association may be organized to engage in any activity in connection with the marketing or selling of the agricultural products of its members, or with the harvesting, threshing, milling, preserving, drying, processing, canning, packing, storing, handling, shipping, or utilization thereof, or the manufacturing or marketing of the by-products thereof, or in connection with the manufacturing, selling, or supplying to its members of machinery, equipment, or supplies; or in the financing of the above-enumerated activities; or in any one or more of the activities specified herein."

G. S. 1949, 17-1606 provides as follows:

"(a) Under the terms and conditions in its bylaws, an association may admit as members, or issue common stock only to persons engaged in the production of the agricultural products to be handled by or through the association, including the lessees and tenants of lands used for the production of such products and any lessors and landlords who receive as rent part of the crop raised on the leased premises. (b) If a member of a nonstock association be other than a natural person, such member may be represented by an individual, associate, officer or member thereof, duly authorized in writing. (c) One association organized hereunder may become a member or stockholder of any other association or associations organized hereunder."

Note G. S. 1949, 17-1617a, which reads as follows:

"Any association may have an interest in or own the preferred or common stock or become a member of any cooperative association. Any association may have an interest in or own preferred or common stock of or become a

part of any other corporation or corporations, or of any corporation engaged in preserving, drying, processing, canning, packing, storing, handling, shipping, utilizing, manufacturing, marketing or selling agricultural products handled by the association or the by-products thereof."

The act provides for the admission to membership of "persons." One of the definitions of the word "person" in G. S. 1949, 17-1602, is an "association." "Association" as used in the act is defined in G. S. 1949, 17-1602 as any corporation organized under the act. It is clear it was not the intention of the legislature in enacting chapter 148 of the Session Laws of 1921 to provide for a county farm bureau becoming a member of a corporation organized pursuant to G. S. 1949, 17-1601 et seq.

G. S. 1949, 17-1605 sets out in detail the powers of associations organized pursuant to the act. Nowhere is there in that section any reference to the work for which farm bureaus may be organized and receive public funds. By the time this act was enacted the farm bureau act had been on our statute books for several years. Their work was well known and had it been the intention of the legislature that farm bureaus organized under G. S. 1949, 2-601 et seq. could become members of associations organized under G. S. 1949, 17-1601 et seq. then it could have so provided. The fact it did not do so is persuasive with us here. In fact it is clear that the two acts each cover an entirely distinct and separate field of activities.

Defendants point out that the bylaws of the Kansas Farm Bureau provide its object shall be in part:

"The purposes for which it is formed are: To strengthen, develop, and correlate the work of the county farm bureaus in their efforts to promote the development of the most profitable and permanent system of agriculture, the most wholesome and satisfactory living conditions; the highest ideals in home and community life and a general interest in the business of farming, and in rural life."

They ask "In the absence of statutory provision why may not the local farm bureau accomplish their worthy purpose and objectives by correlating their work with other like associations in other counties through the very medium organized for the purpose, namely the Kansas Farm Bureau?" The answer is because the act under which the county farm bureaus are organized and receive public funds does not provide as one of the purposes for which the bureaus may be organized, the joining or becoming affiliated with any other organization. Their purposes are limited to education through the

employment of a county agricultural agent. It was generally recognized what field they were to cover. Similar organizations came into being throughout the nation following the enactment of the legislation by congress, to which reference has already been made here.

In the second place, we have difficulty in discerning in what manner the Kansas Farm Bureau was organized for the purpose of carrying out any work in connection with county farm bureaus. We have had no such purpose pointed out to us in the statute, G. S. 1949, 17-1601 et seq.

Defendants point out that the bylaws of the Kansas Farm Bureau provide that each county farm bureau shall be eligible for membership in it. Neither one of the statutes we have discussed here contain any such provision. The Kansas Farm Bureau cannot by its charter or bylaws assume power or functions not conferred by the statute under which it was organized. (See *State, ex rel., v. Wheat Farming Co.*, 137 Kan. 697, 22 P. 2d 1093.)

The conclusion we have reached as to the first paragraph of the judgment of the trial court that the Franklin County Farm Bureau may not under G. S. 1949, 17-1601 et seq., become a member of the Kansas Farm Bureau renders it unnecessary to deal with the other paragraphs of the judgment.

The judgment of the trial court is affirmed.

PRICE, J., concurs in the result.