No. 39,351

THE STATE OF KANSAS, on the relation of John Staley Holden, County Attorney of Gray County, Kansas, *Appellant*, v. BETTY BELT, as County Clerk of Gray County, Kansas, and DONALD ROHRBAUGH, BERT SMITH, ART SEAL, RONALD SALMANS, J. R. ALLEN, FLOYD HARGETT, R. D. MITCHELL, HAROLD HOSKINSON, C. F. COSSMAN, D. J. SMITH, LEO B. BORLAND, NATHAN H. ENGLISH, JOHN H. TIM-KEN, JOHNSON HOLDEN, JESS KOEHN, JOHN O'NEAL, M. L. JOHNSON, VIRGIL GEORGE, S. J. IRSIK, G. A. EGBERT, and L. R. MACKEY, Interveners, *Appellees.*

(264 P. 2d 883)

Opinion filed December 12, 1953.

*Thomas M. Evans,* assistant attorney general, and *John Staley Holden,* county attorney, argued the cause, and *Harold R. Fatzer,* attorney general, was with them on the briefs for the appellant.

*C. C. Linley,* of Cimarron, argued the cause and was on the briefs for the appellees.

The opinion of the court was delivered by

PRICE, J.: This is an appeal by the State from a judgment denying

a writ of mandamus in an action brought by the State upon the relation of the county attorney of Gray County against the county clerk of that county, in her official capacity, to compel that official to extend and spread upon the tax rolls such levy as will raise the sum of $10,270 for the Gray County Agricultural Extension Council budget for the year 1954.

Due to the urgency and necessity of an early decision in the matter, we announced our decision immediately after the appeal was decided, and on November 13, 1953, filed a brief opinion reversing the judgment of the lower court and directed that the mandate of this court issue forthwith. It was further stated that a formal opinion would be filed when the same was prepared. (See page 329, this volume.)

The facts, most of which were stipulated, are really not in dispute and may be summarized as follow:

Pursuant to the provisions of G. S. 1951 Supp. 2-610, Gray County, acting through its three county commissioners, on April 20, 1953, in co-operation with the Gray County Agricultural Extension Council and the Director of Extension of Kansas State College, prepared a budget for the County Agricultural Extension Council for the calendar year 1954 in the sum of $10,270, and certified it to defendant county clerk on that date as the amount of tax necessary to be levied on all tangible taxable property in Gray County sufficient to provide a program of county extension work for 1954.

At all times pertinent the Gray County Agricultural Extension Council was properly functioning and entitled to receive the appropriations provided by law; the levy of $10,270 was in addition to all other levies authorized or limited by law and was not subject to or within the aggregate tax levy limit of Gray County prescribed by G. S. 1949, 79-1947, and the assessed tangible tax valuation of property in Gray County was such that the budget of $10,270 would be produced by less than a one mill levy as provided by G. S. 1951 Supp. 2-610.

On Monday, August 10, 1953, after having given proper notice, Gray County held its meeting for the purpose of hearing and answering objections of taxpayers relative to the proposed budget and to consider amendments thereto as authorized by G. S. 1949, 79-2929. At this meeting two of the three county commissioners voted to reduce the budget for the County Agricultural Extension Council for the year 1954 to the sum of $5,700, and the county clerk was

notified to make the necessary downward adjustment, following which that official made public announcement to those assembled that the reduction so ordered would be made. The meeting was then adjourned. The budget, as amended on August 10th, was not signed by any of the county commissioners on that date or at any other time thereafter.

On August 20th two of the county commissioners called a special meeting of the board to reconsider the action taken by it on August 10th concerning the budget for the County Agricultural Extension Council for 1954. Although orally notified of this special meeting, the record is not clear whether the other county commissioner attended it. At any rate, at this meeting the other two commissioners voted to reinstate the original figure of $10,270, and the county clerk was notified of such action.

The county clerk refused to recognize the action taken at the meeting held on August 20th on the ground she was bound by the action of the board at the meeting of August 10th.

In order to break the stalemate in which the county officials found themselves the board of county commissioners on September 7th passed a resolution directing the county attorney to take whatever action he deemed necessary in order to compel the county clerk to extend and spread upon the tax rolls such levy as would raise the sum of $10,270 for the County Agricultural Extension Council budget for the year 1954. The county clerk stood firm in her refusal to levy the higher figure and this action in mandamus was commenced.

At the trial of the action oral evidence to the effect the lower figure would not be sufficient adequately to operate a proper program of county extension work for 1954 was introduced.

The court made conclusions of fact as above related, and, in addition thereto, found that "in reviewing said Extension Council budget and reducing it to $5,700.00 during the August 10th, 1953, budget hearing meeting, the County Commissioners did not abuse their discretionary powers or show bad faith in any way."

As conclusions of law the court held:

"1. That the preparation of the 1954 budget for the Gray County Agricultural Extension Council on April 20th, 1953, by the Director of Extension of Kansas State College and the Gray County Agricultural Extension Council in co-operation with the County Commissioners of Gray County, Kansas, constituted merely the act of preparing said 1954 budget, and, that said Extension Council budget was subject to later amendment and revision by the

Board of County Commissioners at their budget hearing meeting authorized by G. S. of Kansas for 1949, Sec. 79-2929.

"2. That the Board of County Commissioners of Gray County, Kansas, in their budget hearing meeting on August 10th, 1953, had jurisdiction to hear objections to the budget for 1954 of the Gray County Agricultural Extension Council and, at the said meeting, during said hearing, had the power to reduce said Extension Council budget from $10,270.00 to $5,700.00.

"3. That in the absence of abuse of discretion or evidence of bad faith on the part of said County Commissioners during their August 10th, 1953, budget hearing meeting, this Court may not review their discretionary actions.

"4. That, having taken positive and definite action on reducing the Extension Council budget for 1954 at their August 10th, 1953, budget hearing meeting, and then having adjourned said meeting, the Board of County Commissioners by said adjournment, lost jurisdiction to reconsider said Extension Council budget at a later date.

"5. That the August 20th, 1953, meeting of the County Commissioners to reconsider the Extension Council budget for 1954 was a nullity because of the before described Conclusions of Law."

In accordance with these conclusions, judgment denying a writ of mandamus was entered. Its motion for a new trial being overruled, the State has appealed.

In this court three separate and distinct theories of the case are argued. First, appellee county clerk contends for the theory and reasoning adopted and followed by the trial court, to the effect that the budget prepared back in April, 1953, was subject to later amendment and revision by the board of county commissioners at its regular budget hearing held on August 10th, pursuant to G. S. 1949, 79-2929; that at such meeting the commissioners had authority to reduce the budget, as was done, but that having taken the action they did, and having adjourned the meeting, they lost jurisdiction to reconsider the matter, and the meeting of August 20th, at which the higher original figure was reinstated, was a nullity.

Secondly, the county attorney, while agreeing with appellee's theory as to the legality of events down to and including the action taken by the commissioners on August 10th, contends that the whole matter was within the bosom of the commissioners for a period of ten days following August 10th, by virtue of certain general provisions of our statutes relating to tax budgets and public hearings thereon (G. S. 1949, 79-1801, 2929, 2930 and 2933), and that their action in restoring the original budget figure at the meeting on August 20th was entirely within their discretion and legal.

Thirdly, the attorney general contends that the entire matter is governed by the provisions of G. S. 1951 Supp. 2-610; that the

budget prepared in April, 1953, under the authority of that statute, was final and conclusive and not subject to review or reconsideration at the regular budget hearing of August 10th. In other words, it is argued that the section referred to, and other related sections, provide a procedure of their own for the financing of county agricultural extension councils, and that a budget so prepared, pursuant thereto, is not subject to general provisions relating to the adoption of budgets.

Our consideration of this case convinces us that the last-mentioned contention is correct and must be followed.

Our former statutes dealing with county farm bureaus (G. S. 1949, 2-601 to 607, incl.) were repealed by Chapter 8, Laws of 1951, now appearing as G. S. 1951 Supp. 2-608 to 619, incl., and, as said in *State, ex rel., v. Franklin County Farm Bureau*, 172 Kan. 179, 191, 239 P. 2d 570, this chapter

". . . revamps the whole county farm bureau arrangement in the state. The organizations referred to heretofore in our statutes as farm bureaus of the various counties will be hereafter known and designated as county agricultural extension councils."

### G. S. 1951 Supp. 2-608, provides:

"Whenever there shall be organized in any county of the state of Kansas a county agricultural extension council as specified in section 4 [2-611] of this act, and having for its purpose the giving of instruction in agriculture, home economics, and 4-H club work to the people of said county through practical demonstrations and otherwise, and the employment of an extension agent or agents to prosecute such instructions in agriculture, home economics, and 4-H club work, the Kansas state college of agriculture and applied science shall contribute from federal and state funds granted for demonstrations in agriculture, home economics, and 4-H club work not less than one thousand five hundred dollars ($1,500), as far as such funds are available towards the salary of each county extension agent employed."

### G. S. 1951 Supp. 2-609, provides:

"Before such allocations of funds are made by the director of extension of Kansas state college of agriculture and applied science, the county agricultural extension council shall present to the board of county commissioners of its county: A list of members of the agricultural extension council and of its executive board, with the statement signed by the chairman of the board certifying that these officers have been duly elected as specified in section 4 [2-611] of this oct."

### Provisions of G. S. 1951 Supp. 2-610, material for our purposes, read:

"On or before the thirteenth day of June each year, the executive board of the county agricultural extension council shall file with the county commis-

sioners in the office of the county clerk: (*a*) A list of current members of the county agricultural extension council and its executive board; (*b*) a certification of election of officers as provided in subsection (*c*) of section 4 [2-611] of this act; (*c*) a certificate by the director of extension that the county agricultural extension council is properly functioning and entitled to receive the appropriations provided by law; and (*d*) a budget prepared in co-operation with the board of county commissioners and the director of extension of Kansas state college for the ensuing calendar year. The budget shall clearly show all receipts from all sources. The board of county commissioners shall then make an appropriation and certify to the county clerk the amount of tax necessary to be levied on all tangible taxable property of the county sufficient to provide a program of county extension work, which levy shall be in addition to all other levies authorized or limited by law and shall not be subject to or within the aggregate tax levy limit of the county prescribed by section 79-1947 of the General Statutes of 1949: *Provided,* That such tax levy shall not exceed one-half mill except as hereinafter specified: *Provided further,* That in counties where the half-mill levy will not produce fifteen thousand dollars ($15,000) in revenue, the levy may be increased to as much as one mill, except that in counties with a total assessed tangible tax valuation of thirty million dollars ($30,000,000) or less, the total appropriations shall not exceed fifteen thousand dollars ($15,000): . . ."

Succeeding sections concern the methods and manner of carrying on the work of the extension councils throughout the state, and, while reference is made to such sections, the numerous provisions thereof will not be set out.

It is to be noted that all of the preliminary requirements and conditions precedent mentioned in the three quoted sections had been met. The only question concerns the power and authority of the board of county commissioners at the regular budget hearing on August 10th to reconsider the budget already prepared by it in co-operation with the executive board of the County Agricultural Extension Council and the Director of Extension of Kansas State College, pursuant to the provisions of G. S. 1951 Supp. 2-610, *supra.* We have already indicated that the board did not possess such power and authority.

Under the former law relating to county farm bureaus the statute (G. S. 1949, 2-603) provided that the board of county commissioners should appropriate a sum of not less than $1,200 in order to carry on the program of the bureau. This provision was considered in *Cloud County Farm Bureau v. Cloud County Comm'rs,* 126 Kan. 322, 268 Pac. 91, and it was held:

"Under the act it is the duty of the board of county commissioners to make an appropriation for the maintenance of an existing bureau in the county, when a budget is duly presented by the executive committee of the farm bureau, which has been approved by the Kansas state agricultural college." (Syl. 3.)

Reference is made to what was said on page 326 of the opinion in which it was held that the only discretion vested in the board was whether an amount greater than $1,200 should be appropriated. It is true there is a difference in language between that of the former statute and our present one which provides that the board of county commissioners shall make an appropriation *sufficient to provide a program of county extension work*, but we think the reasoning of the Cloud County case is applicable to the question here presented. To hold otherwise would bring about a situation where a board of county commissioners, by failing to make an appropriation in any amount, or by making one so small as to be ineffectual, could thus defeat the entire agricultural extension program in a given county. Carrying the premise a step farther, similar action by boards of county commissioners in other counties could and would scuttle the entire program throughout the state. A careful reading of the 1951 law convinces us that such was not the intention of the legislature.

In *State, ex rel., v. Jackson County Board of Social Welfare*, 161 Kan. 672, 171 P. 2d 651, where a statute providing for the fixing of a county budget for social welfare purposes was dealt with, it was held that it was the statutory duty of the board of county commissioners to make such levy as was necessary to raise the funds required by the county welfare budget as finally determined by the state board of social welfare, provided the levy was not in excess of the statutory limit of three mills. The opinion contains an interesting discussion of questions similar to the one here and we think that decision to be controlling on the over-all question before us.

No question of fraud or mistake is presented by this record. The facts are not in dispute. The budget prepared through the cooperation of the three agencies on April 20, 1953, pursuant to G. S. 1951 Supp. 2-610, and which was certified to the county clerk on that date, was final and was not subject to revision by the board of county commisisoners at its regular budget hearing in August.

As was said in our former opinion of November 13, 1953, the judgment of the lower court is reversed with directions to issue a peremptory writ of mandamus directing defendant county clerk to extend and spread upon the tax rolls of Gray County such levy as will be sufficient to raise the sum of $10,270 for the Gray County Agricultural Extension Council budget for the year 1954, in accordance with the prayer of the petition.